**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF KANSAS**

**REGAL WARE, INC.,**

        **Plaintiff,**

v.                                    **Case No. 06-2161-JWL**

**VITA CRAFT CORP.,**
**IMURA INTERNATIONAL U.S.A. INC.,**
**and MAMORU IMURA,**

        **Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff Regal Ware, Inc. filed suit against Vita Craft Corp., Imura International U.S.A. Inc. (Vita Craft's parent company), and Mr. Mamoru Imura (the chief executive officer of Imura International) alleging breach of contract and various tort claims. This matter is presently before the court on defendants' motion to dismiss Regal Ware's tort claims for failure to state a claim upon which relief can be granted. For the reasons stated below, defendants' motion to dismiss portions of the complaint is granted in part and plaintiff is granted leave to amend its complaint.

**I.    Factual Background**

This suit stems from a contract entered into between Regal Ware (a Delaware corporation) and Vita Craft (a Kansas corporation) on November 30, 2004. The contract was a Merchandising License Agreement ("MLA") pertaining to radio frequency identification ("RFID") technology used in induction cooking and related cookware. The MLA purportedly

granted Regal Ware the exclusive right and license to use certain RFID technology, which included approximately 47 patents and patent applications directed toward cookware technology. The MLA also purportedly granted to Regal Ware the exclusive right to market, sell and distribute RFID cookware in North America, Central America, and South America. In the MLA, Vita Craft represented to Regal Ware that: (1) it was the sole and exclusive owner of the patents, patent applications and trademark pertaining to the RFID technology; (2) it had the power and authority to grant to Regal Ware the right, privilege and license to sell the RFID cookware described in the agreement (the "Licensed Products"); (3) it had the right and power to grant the licenses to Regal Ware and there were no other conflicting agreements with any other party; and (4) it would maintain, in its own name and at its own expense, appropriate patent protection for the patents and patent applications directed to the RFID technology. Regal Ware paid Vita Craft a returnable one-time Advance Royalty of one million dollars for the exclusive license. The MLA provided that if Vita Craft failed to deliver the Licensed Products to Regal Ware within six months of the effective date of the agreement (January 4, 2005), it would return the one million dollars to Regal Ware.

Regal Ware's complaint alleges that at the time Vita Craft and Regal Ware entered into the MLA, Vita Craft did not in fact own the patents or patent applications referred to in the MLA; rather, Thermal Solutions, Inc., a Kansas corporation, owned them. Thermal Solutions had licensed the patents and patent applications referred to in the MLA to Imura International, who then assigned the license to Vita Craft. According to Regal Ware, the Thermal

2

Solutions/Imura International licenses only granted the right to develop, market and sell residential cooking systems using the licensed technology, not commercial cooking systems, and Thermal Solutions retained the right to license third parties for the commercial trade channel. Thermal Solutions allegedly licensed CookTek Inc. for the commercial channels of trade.

Regal Ware's complaint states that at the time the MLA was entered into, all the defendants had or should have had knowledge of the licenses between Thermal Solutions and Imura International. In agreements dated December 31, 2003, and December 31, 2004, Vita Craft acquired all of Imura International's rights and interests in the Thermal Solutions/Imura International licenses. Therefore, Vita Craft's rights under the patents and patent applications referred to in the MLA are limited by the express terms of the Thermal Solutions/Imura International licenses. Prior to entering the MLA, Regal Ware had no knowledge of the Thermal Solutions/Imura International licenses or of the Imura International/Vita Craft assignments.

Vita Craft did not deliver the Licensed Product to Regal Ware within six months of the effective date of the agreement, January 4, 2005, as required by the MLA. Regal Ware requested that Vita Craft return the one million dollar Advance Royalty via letters dated October 13, 2005, and December 22, 2005, but Vita Craft did not return the Advance Royalty and has refused to do so.

Counsel for Thermal Solutions sent two letters dated January 7, 2006, informing Imura International that it had breached certain provisions of the Thermal Solutions/Imura International

licenses.  Thermal Solutions sent an email dated February 9, 2006, advising Vita Craft and Imura International that Thermal Solutions had terminated the Thermal Solutions/Imura International licenses and that Vita Craft and Imura International no longer had a license to use the RFID technology or to develop, market or sell products with the licensed technology.  Thermal Solutions sent Regal Ware a letter dated March 30, 2006, informing Regal Ware that Thermal Solutions had learned that Vita Craft breached the Thermal Solutions/Imura International licenses and had accordingly terminated all of Vita Craft's rights under the license agreements, effective February 6, 2006.  Thermal Solutions also indicated that any sub-licenses issued by Vita Craft were also terminated.

Based on these events, Regal Ware brings this lawsuit against Vita Craft, Imura International, and Mr. Imura in his individual capacity.  Regal Ware asserts six separate claims: (I) breach of contract, (II) unjust enrichment, (III) conversion, (IV) fraud, (V) fraudulent inducement, and (VI) tortious interference with prospective business advantage.  Defendants contend that the tort claims (claims II through VI) must be dismissed for failure to state a claim for which relief can be granted and that the fraud claims must additionally be dismissed for failure to plead with particularity as required by Fed. R. Civ. Pro. 9(b).

## II.    Motion to Dismiss Standard

The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of [its] claims which would entitle [it] to relief," *Poole v. County of Otero*, 271 F.3d 955, 957 (10th Cir. 2001) (quoting

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff.  *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001).  The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quotation omitted).

When deciding a motion to dismiss, generally it is unacceptable for the court to look beyond the four corners of the pleadings.  *Dean Witter Reynolds, Inc. v. Howsam,* 261 F.3d 956, 961 (10th Cir. 2001).  Regardless of the parties' allegations in other documents, in deciding this motion "we do not consider those materials." *Moffett v. Halliburton Energy Services, Inc*. 291 F.3d 1227, 1231 n.3 (10th Cir. 2002).  However, the court may consider documents attached as exhibits to the complaint.  *Oxendine v. Kaplan,* 241 F.3d 1272, 1275 (10th Cir. 2001) (citing Fed. R. Civ. P. 10(c) and *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991)).

## III.    Discussion

*A.     Count II–Unjust Enrichment*

1.    Vita Craft

Regal Ware claims that Vita Craft was unjustly enriched when it accepted and retained the benefit of the Advance Royalty of one million dollars.  Vita Craft contends that plaintiffs cannot recover under a theory of unjust enrichment because the parties have a valid, express

contract.

Unjust enrichment and restitution, or quantum meruit as it is also called, are synonymous terms for the doctrine of quasi contract. *Mai v. Youtsey*, 231 Kan. 419, 423, 646 P.2d 475, 479 (1982). *See also*, *Fusion, Inc. v. Nebraska Aluminum Castings, Inc.*, 934 F. Supp. 1270, 1274 (D. Kan. 1996)("In Kansas, quantum meruit and restitution are recognized as equivalent theories.")(citations omitted). "'[A] quasi contract is no more than a legal device to enforce noncontractual duties.'" *Id.* (quoting *Sharp v. Sharp*, 154 Kan. 175, 178, 117 P.2d 561 (1941)). In this case, Regal Ware attempts to use the theory of unjust enrichment to enforce the *contractual* duties, imposed upon Vita Craft in the MLA, to either provide the Licensed Products or return the Advance Royalty to Regal Ware. Because the duty is imposed by an express contract, the court finds it inappropriate to use a "legal device to enforce noncontractual duties" to enforce these contractual duties. *See Member Services Life Insurance Co. v. American National Bank and Trust Company of Sapulpa*, 130 F.3d 950, 957 (10th Cir. 1997)(citing "hornbook rule" from 1 Joseph M. Perillo, Corbin on Contracts § 1.20, at 64-65 (rev. ed. 1993) that "quasi-contractual remedies . . . are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issues"). *See also Fusion, Inc.*, 934 F. Supp. at 1275 (D. Kan. 1996)(dismissing restitution counterclaim for failure to state a claim upon which relief can be granted where parties had a valid, written contract). Accordingly, the court grants Vita Craft's motion to dismiss Regal Ware's unjust enrichment claim.

2.      Imura International & Mr. Imura

In support of its unjust enrichment claim against Imura International and Mr. Imura, Regal Ware relies upon case law holding officers and agents of a corporation liable for tortious acts committed by the corporation in which the officer or agent willfully participates.  However, as the defendants point out, this argument fails because, as stated above, unjust enrichment is a quasi-contractual remedy, not a tort.

Regardless of Regal Ware's classification of unjust enrichment as a tort, the court nevertheless finds that Regal Ware fails to state a claim for unjust enrichment against Imura International and Mr. Imura.  The Kansas Supreme Court has held that an unjust enrichment claim consists of three elements: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit  under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value."  *J. W. Thompson Co. v. Welles Products Corp.*, 243 Kan. 503, 512, 758 P.2d 738, 745 (1988)(Citing 12 Williston on Contracts § 1479 (3d ed. 1970) and 66 Am. Jur. 2d. Restitution and Implied Contracts § 4, p. 947).

Regal Ware's complaint alleges that "upon information and belief" it conferred the benefit of the one million dollar Advance Royalty upon defendants Imura International and Mr. Imura.  This allegation seems to impute the Advance Royalty to Imura International and Mr. Imura solely based upon their relationship with Vita Craft as parent company and parent company CEO.  Despite its status as the parent company of Vita Craft, Imura International is

treated separately from Vita Craft unless circumstances justify disregarding the corporate entity.

*Milgo Electronic Corp. v. United Business Communications, Inc.*, 623 F.3d 645, 659 (10th Cir.

1980).  Accordingly, Regal Ware may not rely solely on Imura International's parent-subsidiary

relationship with Vita Craft to allege Imura International's receipt of the Advance Royalty.

Furthermore, Regal Ware's complaint does not ask the court to disregard the corporate entity in

this case.  *See Skidmore, Owings & Merrill v. Canada Life Assur. Co.*, 706 F. Supp. 758, 759

(unjust enrichment claim against parent companies of plaintiff's debtor depended upon existence

of alter ego relationship between parent companies and debtor).   Therefore, that Imura

International received the benefit of the Advance Royalty is not a well-pleaded fact which the

court must accept as true, but rather a conclusory allegation that the court may disregard.

*Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 510 (10th Cir. 1998) ("[W]e need not accept

conclusory allegations.")(citing *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).  Because

Regal Ware has failed to sufficiently allege that it conferred the benefit of the Advance Royalty

upon Imura International, it has also failed to sufficiently allege that it conferred that benefit

upon Imura International's CEO, Mr. Imura.  Accordingly, the court grants Imura International

and Mr. Imura's motion to dismiss with respect to Count II.

C.    *Count III–Conversion*

1.    Vita Craft

Regal Ware alleges that the personal property converted by the defendants is the one

million dollar Advance Royalty.  Defendants argue that because the MLA covers the subject

8

matter of the conversion claim, the claim is barred.  "Conversion is the unauthorized assumption of right of ownership over personal property belonging to another." *Farrell v. General Motors Corp.*, 249 Kan. 231, 245, 815 P.2d 538 (1991)(citing *Moore v. State Bank of Burden*, 240 Kan. 382, 386, 729 P.2d 1205 (1986)).  In *Suburban Ford*, the Kansas Supreme Court favorably cited a Tenth Circuit opinion which points out the "impropriety of confusing contract and tort law." *Ford Motor Credit Company v. Suburban Ford*, 237 Kan. 195, 203-05, 699 P.2d 992, 998 (1984)(citing *Isler v. Texas Oil Gas Corp.*, 749 F.2d 22 (10th Cir. 1984).  *Suburban Ford* held that when parties enter into a contract  which defines their respective rights and duties, tort causes of action concerning the same subject matter as the contract are precluded.  *Id*.

In a more recent case, the Kansas Supreme Court cautioned against an expansive reading of *Suburban Ford*; not all tort claims are barred by the existence of a valid contract.  *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 414, 77 P.3d 130, 145 (2003).  The court stated that "when conduct could satisfy the elements of both a breach of contract or of an independent tort, unless the conduct is permitted by the express provisions of a contract, a plaintiff may pursue both remedies." *Id*.  In *Burcham*, the court conceded that "the determination of what constitutes an independent tort is difficult to assess." *Id*.

In this case, Regal Ware bases its conversion claim upon the allegation that Vita Craft was obligated to return the Advance Royalty to Regal Ware and refused to do so.  However, the Advance Royalty was paid to Vita Craft pursuant to specific provisions of the MLA.  Likewise, the MLA also governed Vita Craft's obligation to return the Advance Royalty.  Therefore, the

MLA created and defined the rights to the Advance Royalty and thus the conversion claim is not independent of the contract claim. The court finds that in this situation, Regal Ware must rely upon its breach of contract claim, rather than a conversion claim. *See Parsons v. Davis*, No. 95-1458-JTM, 1997 WL 446264, at *5 (D. Kan. July 24, 1997)(granting summary judgment on conversion claim because contract created and defined the rights to the property which was subject matter of the conversion claim). Accordingly, Vita Craft's motion to dismiss Regal Ware's conversion claim is granted.

2.    Imura International & Mr. Imura

For the same reasons stated in its analysis of Regal Ware's unjust enrichment claim, the court grants Imura International and Mr. Imura's motion to dismiss Count III. Regal Ware's conversion claim alleges that "upon information and belief Imura International and Imura [have] assumed or exercised the right of ownership" over the Advance Royalty. As stated above, this does not recognize that Imura International and Mr. Imura are distinct from Vita Craft absent a finding of an alter ego relationship between the parent company and subsidiary. Because Regal Ware does not allege any facts which justify disregarding the corporate entity, the court treats Imura International and Mr. Imura separately from Vita Craft. Therefore, Regal Ware's complaint merely alleges a conclusory allegation, rather than a well-pleaded fact, that Imura International and Mr. Imura "assumed the right of ownership" over the Advance Royalty due to their status as parent company and parent company CEO. Accordingly, Regal Ware has failed to state a claim for conversion with respect to Imura International and Mr. Imura.

10

D.      *Counts IV & V–Fraud and Fraudulent Inducement*

Regal Ware alleges that Vita Craft committed fraud or fraudulent inducement by making affirmative misrepresentations that Vita Craft owned the patents and patent applications referred to in the MLA and that Vita Craft had knowledge of material facts of which Regal Ware was unaware.  Defendant argues that Regal Ware failed to plead the fraud claim with the appropriate particularity required by Fed. R. Civ. Pro. 9(b).

Rule 9(b) requires that "[i]n all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b).  This requirement must be read in conjunction with Rule 8's requirement that pleadings be simple, concise, and direct. *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997).  Rule 9(b)'s purpose is to give the defendant fair notice of the plaintiff's claims and the factual grounds upon which they are based. *Id.* (quoting *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992)). Thus, a complaint alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quotation omitted); *accord Schwartz,* 124 F.3d at 1252.  "In other words, the plaintiff must set out the 'who, what, where, and when' of the alleged fraud." *Plastic Packaging Corp. v. Sun Chem. Corp.*, 136 F. Supp. 2d 1201, 1203 (D.Kan. 2001).

The court finds that Regal Ware's complaint fails to meet Rule 9(b)'s pleading requirements with respect to its fraud and fraudulent inducement claims.  Counts IV and V of

11

Regal Ware's complaint contain several allegations that Vita Craft, Imura International, and Mr. Imura collectively had knowledge of material facts that Regal Ware was unaware of and that they made various affirmative misrepresentations. For example, the complaint states: "Vita Craft, Imura International, Imura . . . made affirmative misrepresentations that Vita Craft did in fact have the right and power to grant the licenses granted therein and that there were no other agreements with any other party in conflict therewith." This excerpt mirrors the format of the other allegations contained in Regal Ware's complaint.

While the allegations answer the question of "what" was allegedly misrepresented, they do not articulate the circumstances surrounding the misrepresentation. First, Regal Ware does not adequately plead "who" made the alleged misrepresentations. Simply stating that Vita Craft and Imura International, which are corporate entities, made the misrepresentations is insufficient. Regal Ware must identify the particular individual or individuals who made the misrepresentations. *Plastic Packaging Corp.*, 136 F. Supp. 2d at 1204. Regal Ware argues that the misrepresentations are attributed to Mr. Imura. This argument is insufficient, however, because the allegations against Mr. Imura are lumped together with those against Vita Craft and Imura International. Because it alleges fraud against multiple defendants, Regal Ware must set forth separately the acts complained of by each defendant to satisfy the particularity requirement. *Gottstein v. National Ass'n for Self Employed*, 53 F. Supp. 2d 1212, 1223 (D. Kan. 1999).

Second, Regal Ware does not satisfy the "when" and "where" requirements. Nowhere in the complaint does Regal Ware refer to specific dates or locations where the

misrepresentations occurred.  Regal Ware argues that the misrepresentations "are embodied in the MLA" and thus that is the "when" and "where."  This phrase does not clarify for the court whether Regal Ware relies solely on the MLA as the source of the representations or whether it additionally relies on other misrepresentations connected with the formation of the MLA.

For these reasons, the court finds Regal Ware's fraud claim does not meet Rule 9(b)'s particularity requirement.  The court finds it possible, however, that Regal Ware could plead facts that might cure this deficiency in its complaint.  Therefore, the court exercises its discretion provided by Fed. R. Civ. P. 15(a) and grants plaintiff leave to amend its complaint on or before October 6, 2006, to conform to the pleading requirements imposed by Rule 9(b).

E.      *Count VI–Tortious Interference with Prospective Business Advantage*

1.      Vita Craft

As the basis of its tortious interference with prospective business advantage claim, Regal Ware argues that Vita Craft intentionally breached the MLA without justification and/or induced Regal Ware to enter into the MLA, which deprived Regal Ware of expected future economic benefits associated with reselling RFID cookware systems.  Under Kansas law, the elements of a claim for tortious interference with a prospective business advantage are: "(1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by the defendant; and (5) damages

13

suffered by plaintiff as a direct or proximate result of defendant's misconduct." *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 424, 77 P.3d 130, 151 (2003).

In it's complaint, Regal Ware's tortious interference theory is that Vita Craft acted intentionally and without justification in breaching the MLA and in inducing Regal ware to enter the MLA. Thus, the alleged "intentional misconduct" is Vita Craft's breach of the MLA and inducement of Regal Ware to enter the MLA. Certainly, though, Vita Craft had no independent legal duty, aside from the parties' contractual arrangement, to perform the contract. The only colorable basis for this claim, then, is that Vita Craft had a contractual duty to perform under the MLA. It is well established, however, that as a general proposition "the existence of a contractual relationship bars the assertion of tort claims covering the same subject matter governed by the contract." *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 241 F.Supp.2d 1123, 1151 (D.Kan. 2002) (citing *Atchison Casting Corp. v. Dofasco, Inc.*, 889 F.Supp. 1445, 1461 (D.Kan. 1995), and noting the cases cited therein). Thus, additional tort duties may not be imposed where the parties' duties and rights are already specifically defined by contract. *Id.*; *see also Atchison*, 889 F.Supp. at 1461 ("Where the parties contemplate a remedy in the event of breach, and the provisions of the contract cover the consequences of default, the bargained-for existence of a contractual remedy displaces the imposition of tort duties.").

In this case Vita Craft's obligation to perform under the contract, if any, arose from the parties' contractual relationship, and this contractual relationship bars the imposition of additional tort duties. Accordingly, Regal Ware's tortious interference claim against Vita Craft

14

is patently without merit.  *See, e.g., Curtis 1000, Inc. v. Pierce*, 905 F. Supp. 898, 903 (D.Kan. 1995) (granting summary judgment on claim for tortious interference with prospective business relations where the defendant's alleged violation of the parties' agreement was the misconduct which formed the basis of the plaintiff's claim).  Therefore, with respect to tortious interference with prospective business advantage, Regal Ware has failed to state a claim upon which relief can be granted;  defendant Vita Craft's motion to dismiss Count VI is granted.

2.      Imura International and Mr. Imura

In Count VI of its complaint, Regal Ware does not allege any intentional misconduct on the part of Mr. Imura and Imura International.  As stated above, "intentional misconduct" is an essential element of a claim for tortious interference with prospective business advantage.  *Burcham*, 276 Kan. at 424, 77 P.3d at 151.  Therefore, Regal Ware's complaint fails to state a claim for tortious interference with prospective business advantage against Imura International and Mr. Imura.  Accordingly, the motion presented by  Imura International and Mr. Imura to dismiss Count VI is granted.

**IT IS ORDERED BY THE COURT THAT** defendants' motions to dismiss (Doc. # 16 and Doc. # 18) portions of plaintiff's complaint are granted in part.  Plaintiff is granted leave to amend its complaint on or before October 6, 2006, for the sole purpose of attempting to conform to the pleading requirements of Fed. R. Civ. Pro. 9(b).

**IT IS SO ORDERED.**

Dated this 19th  day of September, 2006, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United Stated District Judge
